## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NICE NORTH AMERICA LLC,<br><br>　　　　　Defendant. | Civil Action No. 2:25-cv-00352<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this complaint against Nice North America LLC ("Nice" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.　　This is a patent infringement action against Defendant for infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available as provided below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,246,173 | Method And Apparatus For Classifying IP Data | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246173 |
| 2. | 7,263,102 | Multi-Path Gateway Communications Device | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7263102 |
| 3. | 7,304,570 | Methods, Systems, And Computer Program Products For Providing Context-Based, Hierarchical Security For A Mobile Device | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7304570 |
| 4. | 7,394,798 | Push-To Talk Over Ad-Hoc Networks | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7394798 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 5. | 7,408,872 | Modulation Of Signals For Transmission In Packets Via An Air Interface | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7408872 |
| 6. | 8,401,571 | Mobile Electronic System | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8401571 |

2. Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3. Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. Nice is a corporation organized under the laws of the State of California with its principal place of business located at 5919 Sea Otter Place, Suite 150, Carlsbad, California, 92010.

5. Nice may be served through its registered agent for service, Corporation Service Company d/b/a CSC-Lawyers Inc. located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California.

## JURISDICTION AND VENUE

6. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-5 as though fully set forth in their entirety.

7. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Defendant is subject to this Court's specific and general personal jurisdiction under

due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

10.     Specifically, Nice intends to do and does business in, has committed—and continues to commit—acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

11.     Nice maintains regular and established places of business in this District.

12.     Nice offers products and services and conducts business in the Eastern District of Texas.  For example, Nice's Home Management Partner in Allen, Texas, Audience LLC, promotes, advertises, and provides Nice products and certified installation services within this District:



**Exhibit 1** (emphasis added).

13.     In addition, to conduct this business, Nice employs at least one individual within Texas that, on information belief, travels to this District for purposes of selling the Accused Products to companies doing business within this District.  This individual's employment with Nice is conditioned upon and based on his residence and continued residence within Texas and on his travel to this District for business purposes to further the specific infringing business activities of Nice within the District.

14.     On information and belief, Nice also leases, owns, stores, services, and/or operates real and personal property including, but not limited to, vehicles and other equipment, and provides and funds office space and equipment, vehicles, and other equipment to its employees, exclusive and non-exclusive contractors, agents, and affiliates, within this District for the specific purposes of offering, provide, and/or support its infringing products and services within this District.

15.     Nice's business specifically depends on employees, exclusive and non-exclusive

contractors, agents, and affiliates, etc., being physically present at places in the District, and Nice affirmatively acted to make permanent operations within this District to service its customers.  *See In re: Cray Inc.*, 871 F.3d 1355, 1365–66 (Fed. Cir. 2017) (citing *In re: Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985)).  Nice employs and contracts with those employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., with the specific requirement that those individuals and entities maintain a presence in the District to service customers within the District. At least through these employees, Nice does its business in this District through a permanent and continuous presence.  *See In re: Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

16.    As a non-exclusive example of Nice's presence in the District, Nice's website lists at least nine Home Management Partners in the District, including:

- **Aspen Electronic Systems LLC** at 1304 A Five Notch Rd, Marshall, Texas 75670

- **Audience, Inc** at 203 W. Belmont Dr. Allen, Texas 75013;

- **Audio Plus Inc** at 225 South Street, Nacogdoches, Texas 75961;

- **Audio Video Innovations (TX)** at 5908 Stone Creek Dr., The Colony, Texas 75056;

- **AV Nerd** at 114 N Ohio St Suite 103, Celina, Texas 75009;

- **Comp-E-Ware Technology** at 1741 N Hwy 377, Roanoke, Texas 76262;

- **Home Theater Concepts** at 225 South Street, Nacogdoches, Texas 75961;

- **SmartSystems** at 2117 Dana Ct., Flower Mound, Texas 75028;

- **Thurman Accessories, LLC** at 3079 Whispering Oaks Drive, Highland Village, Texas 75077.

*See* **Exhibit 2** (showing Home Management Partners in this District listed on Nice's website at https://na.niceforyou.com/find-an-expert/home-management/).

17.    On its website, Nice describes how it directs its Home Management Partners to market

and use its products.  For example, as shown in the excerpt below, Nice provides its Home Management Partners with marketing materials, such as "[marketing] campaigns, co-branded collateral and mdf [marketing development funds] claims":



**Exhibit 3** (excerpts from Nice website describing benefits for Nice Home Management Partner at https://na.niceforyou.com/partners/#benefits).

18.     Further, Nice provides Home Management Partners with training and certification related to installing Nice's smart home solutions through "Nice University":



**Exhibit 3.**

19.     Nice ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within the District.

20.     Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

## **THE ACCUSED PRODUCTS**

21.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-20 as though fully set forth in their entirety.

22.     Based upon public information, Nice owns, operates, advertises, and/or controls the website https://na.niceforyou.com/ through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.  *See, e.g.*, **Exhibit 2.**

23.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security platform and systems.

24.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home alarm and/or security platform and systems, which includes, but is not limited to the Nice Home products identified in <u>Exhibits A–F</u> (Evidence of Use Regarding Infringement of the Asserted Patents), and associated hardware, software and applications (the "<u>Accused Products</u>").

25.    Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for home security and control.

26.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 7,246,173</u>

27.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

28.    The USPTO duly issued U.S. Patent No. 7,246,173 (hereinafter, the "'173 patent") on July 17, 2007, after full and fair examination of Application No. 09/834,918, which was filed on April 16, 2001.  *See* '173 patent at 1.

29.    IoT Innovations owns all substantial rights, interest, and title in and to the '173 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

30.    The claims of the '173 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

31.     The written description of the '173 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

32.     Defendant has directly infringed one or more claims of the '173 patent by using, providing, supplying, or distributing the Accused Products.

33.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '173 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,246,173).

34.     For example, as detailed in Exhibit A, the installation and use of the Accused Products, including but not limited to Nice's GC2e Security Panel, performs a method of classifying Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus in a packet switched network, said method comprising: receiving said data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and classifying said data at said first node based on an entry in said header.

35.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '173 patent.

36.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 7,263,102</u>

37.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

38.     The USPTO duly issued U.S. Patent No. 7,263,102 (hereinafter, the "'102 patent") on August 28, 2007 after full and fair examination of Application No. 10/306,848 which was filed on November 27, 2002.  *See* '102 patent at 1.  A Certificate of Correction was issued on January 1, 2013.  *See id.* at 18.

39.     IoT Innovations owns all substantial rights, interest, and title in and to the '102 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

40.     The claims of the '102 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of virtual personalized network setting.

41.     The written description of the '102 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

42.     Defendant has directly infringed and continues to infringe one or more claims of the '102 patent by using, providing, supplying, or distributing the Accused Products.

43.     Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 14 of the '102 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,263,102).

44.    For example, as detailed in <u>Exhibit B</u>, the Accused Products, used by Defendant, provide a personal digital gateway, comprising: at least one input/output processor to input and to output data with the personal digital gateway; at least one communications interface for communicating data with a communications device selected from a plurality of communications devices, the plurality of communications devices comprising at least one of a wireless communications device, a mobile phone, a wireless phone, a WAP phone, an IP phone, a satellite phone, a computer, a modem, a pager, a digital music device, a digital recording device, a personal digital assistant, an interactive television, a digital signal processor, and a Global Positioning System device; a memory device for storing the data; a rule-based application data server providing a rule-based engine to categorize the data as at least one of (1) data associated with an access agent, (2) data associated with a configuration agent, (3) data associated with a security agent, and (4) data associated with a management agent; and a processor communicating with the memory device, the processor selecting data stored in the memory device based upon information contained within a rule-based profile.

45.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '102 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '102 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '102 patent, including, for example, claim 14.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the

Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '102 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '102 patent.  Defendant's inducement is ongoing.

46.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '102 patent.  Defendant has contributed to the direct infringement of the '102 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '102 patent, including, for example, claim 14. The special features constitute a material part of the invention of one or more of the claims of the '102 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

47.    Defendant had knowledge of the '102 patent at least as of the date when it was notified of the filing of this action.

48.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

49.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

50.    Defendant's direct infringement of one or more claims of the '102 patent is, has been,

and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

51.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '102 patent.

52.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

53.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '102 patent.  Defendant's actions have interfered with and will interfere with IoT's ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 7,304,570</u>

54.     IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

55.     The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 7,304,570 (hereinafter, the "'570 patent") on December 4, 2007, after full and fair examination of Application No. 11/200,611 which was filed on August 10, 2005.  *See* '570 patent at 1.  A Certificate of Correction was issued on November 4, 2008.  *See id* at 15.

56.     IoT Innovations owns all substantial rights, interest, and title in and to the '570 patent,

including the sole and exclusive right to prosecute this action and enforce the '570 patent against infringers and to collect damages for all relevant times.

57.     The claims of the '570 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of context-based, hierarchical security for a mobile device.

58.     The written description of the '570 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

59.     The '570 patent was filed on August 10, 2005, and it claims "[m]ethods, systems, and computer program products for providing context-based, hierarchical security for a mobile device,' including but not limited to through "storing a hierarchy of security actions" with "multiple levels" for protecting data stored on a "mobile device and preventing unauthorized use of the mobile device." '570 patent, at 1.

60.     Defendant has directly infringed one or more claims of the '570 patent by using, providing, supplying, or distributing the Accused Products.

61.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '570 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,304,570).

62.     For example, as detailed in Exhibit C, Defendant, through the use and provisions of the Accused Products, performs a method for providing context-based, hierarchical security for a

mobile device, the method comprising storing a hierarchy of security actions for at least one of protecting data stored on a mobile device and preventing unauthorized use of the mobile device, the hierarchy including a plurality of security levels, each security level including at least one context-based security action; performing at least one security action associated with a first security level in response to the existence of a first context associated with the first security level; and performing at least one security action associated with a second security level in response to the existence of a second context associated with the second security level.

63.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '570 patent by inducing others to directly infringe the '570 patent.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '570 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '570 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '570 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '570 patent.  Defendant's inducement is ongoing.  *See, e.g.*, Exhibit C; *supra* at ¶ 24.

64.    Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '570 patent.  Defendant has contributed to the direct infringement of the '570 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '570 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '570 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.  *See, e.g.*, Exhibit C; *supra* at ¶24.

65.    Defendant had knowledge of the '570 patent at least as of the date when it was notified of the filing of this action.

66.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

67.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

68.    Defendant's direct infringement of one or more claims of the '570 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

69.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '570 patent.

70.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant

alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

71.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '570 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 7,394,798</u>

72.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

73.    The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 7,394,798 (the "'798 patent") on July 1, 2008, after full and fair examination of Application No. 10/962,694, which was filed on October 13, 2004.  *See* '798 patent at 1.

74.    IoT Innovations owns all substantial rights, interest, and title in and to the '798 patent, including the sole and exclusive right to prosecute this action and enforce the '798 patent against infringers and to collect damages for all relevant times.

75.    The claims of the '798 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve communication between network nodes in a network by grouping and using direct connections to save network resources.

76.    The written description of the '798 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

77.    Defendant has directly infringed and continues to directly infringe one or more claims of the '798 patent by using, providing, supplying, or distributing the Accused Products.

78.    Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 16 of the '798 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,394,798).

79.    For example, as detailed in as detailed in Exhibit D, the installation and use of the Accused Products, including but not limited to Nice's 2GIG Z-Wave products, perform a method for controlling network system comprising temporarily forming a first group including a first plurality of network nodes, temporarily forming a second group including a second plurality of network nodes, sending and receiving information between the first group and the second group, wherein a first network node included in the first plurality of network nodes and the second plurality of network nodes sends and receives the information between the first group and the second group; wherein the information is sent and received using a direct contact via a radio connection between at least two network nodes of the first group and the second group.

80.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '798 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '798 patent by providing or requiring use of the Accused

Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '798 patent, including, for example, claim 16.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '798 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '798 patent.  Defendant's inducement is ongoing.

81.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '798 patent.  Defendant has contributed to the direct infringement of one or more claims of the '798 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '798 patent, including, for example, claim 16.  The special features constitute a material part of the invention of one or more of the claims of the '798 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

82.    Defendant had knowledge of the '798 patent at least as of the date when it was notified of the filing of this action.

83.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of

others, and thus have been willfully blind of IoT Innovations' patent rights.

84.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

85.    Defendant's direct infringement of one or more claims of the '798 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

86.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '798 patent.

87.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

88.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '798 patent. Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: <u>INFRINGEMENT OF U.S. PATENT NO. 7,408,872</u>

89.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

90.    The USPTO duly issued U.S. Patent No. 7,408,872 (hereinafter, the "'872 patent") on

August 5, 2008, after full and fair examination of Application No. 10/483,367, which was filed on July 9, 2001.  *See* '872 patent at 1.

91.    IoT Innovations owns all substantial rights, interest, and title in and to the '872 patent, including the sole and exclusive right to prosecute this action and enforce the '872 patent against infringers and to collect damages for all relevant times.

92.    The claims of the '872 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of signal modulation.

93.    The written description of the '872 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.    Defendant has directly infringed one or more claims of the '872 patent by using, providing, supplying, or distributing the Accused Products.

95.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '872 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,408,872).

96.    For example, as detailed in Exhibit E, the installation and use of the Accused Products, including but not limited to, Nice's MyBell IP Premium Indoor Monitor, Adobe Color Bulb, Nice System Controller, and associated software and hardware, perform a method for modulating signals, wherein signals are to be transmitted by a device in packets via an air interface, the method comprising: receiving a first plurality of bits and a second plurality of bits, creating a pair of bits

by adding a set bit to a first bit of said first plurality of bits, wherein one of said set bit and said first bit of said first plurality of bits has a fixed value, and mapping one of a first set of values to said pair of bits according to a selected modulation scheme and mapping a second set of values to said second plurality of bits according to said selected modulation scheme.

97.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '872 patent.

98.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 8,401,571</u>

99.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

100.     The USPTO duly issued U.S. Patent No. 8,401,571 (hereinafter, the "'571 patent") on March 19, 2013, after full and fair examination of Application No. 10/534,012, which was filed on May 5, 2005, which claims priority to a PCT application, filed November 5, 2002.  *See* '571 patent at 1.  A Certificate of Correction was issued on March 11, 2014.  *See id.* at 11.

101.     IoT Innovations owns all substantial rights, interest, and title in and to the '571 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

102.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '571 patent.

103.    The written description of the '571 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

104.    The claims of the '571 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the operation of previous devices and systems by using a posture of an apparatus to select a mode of presentation.

105.    Defendant has directly infringed one or more claims of the '571 patent by using, providing, supplying, or distributing the Accused Products.

106.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '571 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,401,571).

107.    For example, as detailed in Exhibit F, Defendant, using the Accused Products and their associated hardware and software and functionalities, sells, offers for sale, imports, and/or uses the Accused Products, which comprise an apparatus with at least one processing component configured to process data indicative of the current posture of said apparatus for enabling a posture related presentation of information to a user *via* an output component, said processing including selecting one of at least two different modes of presentation depending on said current posture of said apparatus.

108.    Defendant had knowledge of the '571 patent at least as of the date when it was notified of the filing of this action.

109.     Upon information and belief, Defendant has also indirectly infringed one or more claims of the '571 patent by inducing others to directly infringe said claims.

110.     Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '571 patent by providing or requiring use of the Accused Products.

111.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '571 patent, including, for example, claim 1.

112.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on its website, app, or written documentation on how to use the Accused Products in an infringing manner.

113.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '571 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '571 patent. Defendant's inducement is ongoing.

114.     Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the '571 patent.

115.     Defendant has contributed to the direct infringement of the '571 patent by its personnel, contractors, and customers.

116.     The Accused Products have special features that are specially designed to be used in

an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '571 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '571 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, as shown in Exhibit F, the primary purpose of the Accused Products is to act and operate in a way that infringes the '571 patent.

117.    Defendant's contributory infringement is ongoing. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

118.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

119.    Defendant's direct infringement of one or more claims of the '571 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

120.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

121.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '571 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and

technology.   The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

122.    IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

123.    IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '102 patent, '570 patent, '798 patent, and '571 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '102 patent, '570 patent, '798 patent, and '571 patent by such entities;

c.    Judgment that Defendant accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements be found willful as to the '102 patent, '570 patent, '798 patent, and '571 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>April 7, 2025</u>          Respectfully submitted,

By: <u>*/s/ C. Matthew Rozier*</u>

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff IOT INNOVATIONS LLC***

*Admitted to the Eastern District of Texas

## List of Exhibits

1. Webpage: Nice Home Management Partner Audience LLC marketing and promotion.
2. Webpage: Nice Home Management Partners in Eastern District of Texas
3. Webpage: Nice Home Management Partner Benefits
A. Exemplary Claim Chart for U.S. Patent No. 7,246,173
B. Exemplary Claim Chart for U.S. Patent No. 7,263,102
C. Exemplary Claim Chart for U.S. Patent No. 7,304,570
D. Exemplary Claim Chart for U.S. Patent No. 7,394,798
E. Exemplary Claim Chart for U.S. Patent No. 7,408,872
F. Exemplary Claim Chart for U.S. Patent No. 8,401,571

## List of Attachments

- Civil Cover Sheet
- Proposed Summons